Filed 12/8/21  P. v. Cunningham CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059252 |
| v. | (Super. Ct. No. 10CF1764) |
| DAVID FRANCIS CUNNINGHAM, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paige B. Hazard and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

This is an appeal from the trial court's denial of defendant David Francis Cunningham's petition to vacate his murder conviction and to be resentenced. (Pen. Code, § 1170.95.)[1] Cunningham argues he was denied his due process rights by not being present at the hearing where the court ruled he had not set forth a prima facie case for relief. We conclude that Cunningham not entitled to be present at the hearing because it was not a critical stage of the proceedings. Further, even if he was, Cunningham admitted was he was the actual killer in the record of conviction. He was therefore ineligible for relief as a matter of law, and any error with respect to his presence at the hearing was harmless. Accordingly, we find no error and affirm the order.

I

FACTS

*Original Proceedings*

In October 2011, the Orange County District Attorney filed an information alleging that Cunningham killed Jason Williams in December 2004. Cunningham was charged with one count of murder (§ 187, subd. (a)). Two enhancements were alleged: personal discharge of a firearm causing the victim's death (§ 12022.53, subd. (d)), and the special circumstance of murder during a robbery (§§ 190.2, subd. (a)(17)(A), 211, 212.5). On the day set for trial in 2012, Cunningham entered a guilty plea to count one in exchange for dismissing both enhancements, which removed the possibility of a sentence of life without parole.

---

[1] Subsequent statutory references are to the Penal Code.

On the plea agreement form, also known as the *Tahl* form,[2] Cunningham stated the following facts as the basis for his plea: "[O]n 12/17/04, in Orange County myself and Winston Miller, aka: Wink, 'Dwayne Thompson,' set out to rob Jason Williams. During the robbery the loaded gun I was holding accidentally went off and shot [and] killed Jason Williams. I took his money and cell phone while Winston Miller drove away. I intended to rob Mr. Williams that night and I knew I was holding a loaded gun."

During the hearing where Cunningham's plea was ultimately accepted, there were discussions back and forth about numerous matters, including statements by defense counsel and Cunningham that he did not want to go to trial with his current attorney. The trial court said it was inclined to relieve current counsel and appoint a new lawyer.

After further discussion, the prosecutor stated it would offer Cunningham a guilty plea and 25 years to life rather than life without parole. The court encouraged defense counsel to discuss the plea offer with Cunningham. Thereafter, there was a request by defense counsel to have Cunningham psychiatrically evaluated prior to incarceration. Defense counsel commented that "many times the . . . prison psychiatrist classifies them as a psychopath, denying them their ability to get parole." The prosecutor believed this would not be particularly useful as the Department of Corrections would perform its own assessment in any event. Defense counsel, before withdrawing his request, noted "[the prosecutor] was kind enough to include the accidental discharge resulting in death," apparently referring to Cunningham's admissions on the *Tahl* form. The court noted: "Yes, because this is going to go down as basically a felony murder rule

---

[2] See *In re Tahl* (1969) 1 Cal.3d 122, overruled on other grounds by *Mills v. Municipal Court* (1973) 10 Cal.3d 288, 291.

3

kicking in when a robbery took place and the gun accidentally went off. [¶] So there's no premeditation, deliberation, intent to kill. That's off the table. Basically, it's a felony murder case."

Cunningham then proceeded to plead guilty to first degree murder. When discussing sentencing, after the additional allegations had been dismissed for sentencing purposes, the court noted: "So now we're really just going back to count 1, felony murder straight without [life without parole]." Cunningham was sentenced to 25 years to life on the murder count.[3]

*Current Petition*

In February 2019, Cunningham filed a petition pursuant to section 1170.95 to recall his petition and resentence him. The checkbox petition alleged that he was charged in a manner that permitted a prosecution to proceed against him under a theory of felony murder or under the natural and probable consequences doctrine. He stated he pleaded guilty because he believed he could have been convicted of felony murder at trial, and he could not now be convicted of first or second degree murder based on the changes to the law enacted by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). The trial court appointed the public defender's office to represent Cunningham.

At the hearing on the petition, Cunningham was not present. His counsel objected to proceeding without Cunningham as a matter of "due process," but the court disagreed, citing case authority which stated the prima facie determination could be made by the court without a hearing. Defense counsel argued that the court was not limited to the record, but could consider "all of the information that I think I could place before

---

[3] Cunningham's supplemental brief includes a paragraph of facts from Winston Miller's preliminary hearing. These facts lack a record citation and are irrelevant to the issues in this case, and we therefore disregard them.

4

[it]." Counsel believed "Cunningham didn't get a fair shake back in 2010," and there was information outside the record that "would have been helpful to him." Counsel admitted that "if the court chooses to limit itself to only the record of conviction, certainly I can't prevail on this motion." Counsel requested "the opportunity to further investigate the circumstances regarding the death of Jason Williams." The trial court disagreed, finding that Cunningham had not met his burden to show that he was entitled to relief under the statute. Because he admitted to being the actual killer, he was ineligible as a matter of law. Cunningham now appeals.

## II

## DISCUSSION

Cunningham's primary argument on appeal is that he was denied his due process right to be present at the prima facie hearing. He asserts that if he was present, he could have explained he did not actually shoot the victim and only pleaded guilty because the prosecutor offered him a chance at parole if he admitted he shot the victim. Because the prima facie review is a not a critical stage of the proceedings, his presence was not required. Further, the lack of his presence was harmless as he was not entitled to relief under the statute in any event.

### A. *Senate Bill 1437*

Effective January 1, 2019, the Legislature passed Senate Bill 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the

5

underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill 1437 "amended sections 188 and 189 and created new section 1170.95. The amendments to sections 188 and 189 together change the felony murder rules and the 'natural and probable consequences theory' when convicting a participant in a felony for murder, but who did not actually kill the victim." (*In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2.)

As amended and as relevant here, section 189, subdivision (e), states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer." Eligible persons can petition to dismiss their prior murder convictions and be resentenced if they were convicted under an accomplice liability theory of murder that is no longer valid. (§ 1170.95.)

Procedurally, there are multiple steps in a petition under section 1170.95. First, the petitioner must include a declaration that states he or she is eligible for relief. The petition must also include the case number, date of conviction, and state whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1)(B), (C).)

If the petition complies with these requirements, the court appoints counsel. (*People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).)[4] The court then evaluates the petition to determine if it makes a prima facie showing that relief is available, and if so, it issues an order to show cause. (§ 1170.95, subd. (c).) At the prima facie stage, the court may use the record of conviction to determine if the petitioner qualifies for relief. (*Lewis*, at

---

[4] *Lewis*, *supra*, 11 Cal.5th 952, is a critical case in section 1170.95 jurisprudence, and it was issued after briefing in this case was completed. On our own motion, we asked the parties for supplemental briefing on the import of *Lewis* to this case, and we have reviewed their submissions.

pp. 970-971.)  Documents such as the information and the *Tahl* form are part of the record of conviction.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330 ["the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea"], abrogated in part by *Lewis,* at pp. 961-964; *People v. Smith* (1988) 206 Cal.App.3d 340, 344-345 [*Tahl* form].)  If the court finds the petitioner has made a prima facie showing, it issues an order to show cause, and after briefing, conducts an evidentiary hearing. (*Lewis*, at pp. 970-971.)

*B.  Cunningham's Presence*

We review de novo Cunningham's constitutional claim that he had a right to be present while the court conducted its prima facie review of his petition.  (*People v. Simms* (2018) 23 Cal.App.5th 987, 994 (*Simms*).)  Under both the state and federal Constitutions, a defendant has a right to counsel at all critical stages of the proceedings. (U.S. Const., 6th Amend.; Cal. Const., art I, § 15; *Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1004-1005.)  Critical stages are "those events or proceedings in which the accused is brought in confrontation with the state, where potential substantial prejudice to the accused's rights inheres in the confrontation, and where counsel's assistance can help to avoid that prejudice." (*Gardner*, at pp. 1004-1005.)  Among others, arraignments, preliminary hearings, plea negotiations, sentencing, and resentencing are all critical stages.  (*Id.* at p. 1005; *Simms*, at p. 996; *People v. Rouse* (2016) 245 Cal.App.4th 292, 297.)

First, we note that it is not even clear that the court is *required* to conduct a hearing at all.  While the statutory language regarding the order to show cause specifies that the court shall hold a hearing, the provisions on the prima facie stage do not mention

7

a hearing. (§ 1170.95, subds. (c), (d).) Therefore, while the court may certainly set a hearing at the prima facie stage if it believes that a hearing would be helpful, we see no indication, either in the statutory language or the relevant case law, that it is required to do so.

Second, even assuming a hearing is required, we conclude that a hearing to determine whether the petition sets forth a prima facie case for relief is not a critical stage of the proceedings where the defendant's presence is required as a matter of due process. A few examples of when a defendant's presence is required, unless waived, may be useful. In the context of Proposition 47, the Safe Neighborhoods and Schools Act, once a defendant has "passed the eligibility stage" and has been found eligible for resentencing, the proceedings are "akin to a plenary sentencing hearing" and are therefore a critical stage of the proceeding. (*People v. Rouse*, *supra*, 245 Cal.App.4th at pp. 299-300.) Similarly, when eligibility under Proposition 47 depends on a factual question such as the value of stolen property, the defendant has a right to be present. (*Simms*, *supra*, 23 Cal.App.5th at pp. 996-998.)

By way of contrast, a prima facie review under section 1170.95 is a purely legal inquiry to determine whether the petitioner has met the requirements for eligibility. The court's role at that point is to review the petition and decide if it supports a prima facie claim for relief, resorting only to the petition itself and the record of conviction. (§ 1170.95, subd. (c); *Lewis*, *supra,* 11 Cal.5th at pp. 970-971.) At the prima facie stage, ""the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."" (*Lewis*, at p. 971.) "[A] trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.) That does not mean, however,

8

that the court is required to accept every fact the petition alleges as the unvarnished truth. "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id.* at p. 971.)

The prima facie stage is, therefore, a legal inquiry based on the petition and the existing record. It does not matter, as Cunningham asserts, "why he entered his guilty plea to felony murder." His reasons are not legally relevant. All that is relevant, at the prima facie stage, is whether the petition and the record of conviction support the petitioner's claim that he or she meets the statutory requirements under section 1170.95. While the court cannot engage in factfinding at this stage, it is not required to ignore the facts in the record. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) Nor is Cunningham correct in asserting that "the ultimate factual question to answer was whether [he] was actually the shooter." It was not. As we will explain further below, the issue of whether he "was actually the shooter" was resolved when he confessed that he was in the *Tahl* form.

"A criminal defendant's right to attend critical proceedings against him is subject to recognized limitations. '[I]t is well established,' for example, that there is no such 'constitutional or statutory right to be present to address purely legal questions or where [the defendant's] "presence would not contribute to the fairness of the proceeding."'" (*Simms*, *supra*, 23 Cal.App.5th at p. 996.) The court's review of a petition under section 1170.95 for prima facie sufficiency is neither. The court's review addresses purely legal questions, and there is simply nothing the defendant can contribute. The state of the record is what it is, and the defendant's presence cannot change that. This case itself is an example of why that is so. The record of conviction included Cunningham's confession that he was the actual killer. Actual killers, as we explain in more detail below, are ineligible for relief under section 1170.95.

9

Accordingly, there was nothing for Cunningham to add to the hearing by his presence. Accordingly, we find no error in the court's decision not to transport him from prison to court for this hearing.

*C. Entitlement to Relief and Harmless Error*

Cunningham argues that the proper standard for harmless error in this case is the beyond a reasonable doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. We are not persuaded that he is correct. It is likely that the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 applies, which is whether in the absence of the error, the defendant had the reasonable probability of a more favorable result. (See *Lewis*, *supra*, 11 Cal.5th at pp. 974-975.) Ultimately, which harmless error standard applies is irrelevant; even under the *Chapman* standard, the failure to have Cunningham present was harmless, because the court found he was not entitled to relief as a matter of law. We review the trial court's finding that Cunningham was statutorily ineligible for relief de novo. (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1181.)

As we noted above, the court's role at the prima facie stage is to accept the petition's factual allegations as true, without engaging in factfinding, the weighing of evidence, or determining credibility. The exception, however, is when the record of conviction includes facts – such as an admission of guilt – that contradict the petition. (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972.)

Here, the petition alleged that Cunningham could not be convicted of first or second degree murder under current law. This is directly contradicted by the record. He confessed to shooting and killing the victim in the *Tahl* form. Contrary to Cunningham's assertion, the factual basis stated in the *Tahl* form is not "vague and ambiguous." It is perfectly clear: "During the robbery *the loaded gun I was holding accidentally went off and shot [and] killed Jason Williams. I took his money and cell*

phone while Winston Miller drove away. I intended to rob Mr. Williams that night and I knew I was holding a loaded gun." (Italics added.) The court could readily determine that petitioner "was convicted of a qualifying crime, was the actual killer, or was tried under the felony-murder . . . doctrine[], by a simple examination of the record . . . ." (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 909, review granted August 12, 2020, S263219, abrogated in part by *Lewis*, *supra*, 11 Cal.5th 952.)

Based on that review, there is no doubt that as the actual killer, defendant is not eligible for resentencing under section 1170.95. (§ 189, subd. (e)(1).) Senate Bill 1437 amended section 189, subdivision (e)(1), to state a participant in the perpetration of a felony in which a death occurs is liable for murder where the participant is the actual killer. (Stats. 2018, ch. 1015, § 3; § 189, subd. (e)(1).) Thus, the trial court correctly reasoned that if defendant pleaded guilty as the actual killer, which he did, he was not eligible for resentencing.

The argument defense counsel made in the trial court, which is repeated by counsel here, seeks to expand the court's inquiry well beyond the record of conviction to the point of essentially relitigating the case. This reading of the statute is simply unsupported by the language and purpose of Senate Bill 1437. Proceedings under this law are not intended to substitute for appellate review or habeas corpus proceedings.

"We do not believe it is reasonable to interpret section 1170.95 as allowing for . . . challenges based on attacks on prior factual findings. Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts*

11

*wrong*. The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.) No principled distinction between factual findings and factual admissions exists in this context. """A guilty plea amounts to an admission of every element of the crime and is the equivalent of a conviction.""" (*People v. Mazumder* (2019) 34 Cal.App.5th 732, 741.)

Nor, as counsel argues on appeal, is why Cunningham chose to plead guilty relevant. It is clear from the record that he did plead guilty, and he did so knowingly, voluntarily, and intelligently. Cunningham's attempt to recast the facts recited in the *Tahl* form as meaning something other than what they unambiguously state is entirely unpersuasive. He cannot contradict his admissions in the hope of providing grounds for relief under section 1170.95. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The facts supporting relief must *already* be present in the record.

Where, as here, the record of conviction includes information "that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189 . . . for example, a petitioner who admitted being the actual killer as part of a guilty plea" denying relief is appropriate. (*People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 229-330.) No "glossing over" of the *Tahl* form, as Cunningham claims the court "must have done" was necessary to reach the conclusion that Cunningham admitted to actually killing the victim.

Senate Bill 1437 provides relief only for a specified class of crimes, and Cunningham's offense is simply outside its ambit. As the admitted actual killer, he is statutorily ineligible for relief. Accordingly, the trial court did not err in denying relief,

and any error in failing to transport him to the prima facie hearing was therefore harmless beyond a reasonable doubt.

## III
## DISPOSITION

The order is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.